# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | No. 13 C 1725 |
| THE MCGRAW-HILL COMPANIES, INC. ) and STANDARD & POOR'S FINANCIAL ) SERVICES LLC, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In January 2012, Illinois' Attorney General filed suit on the State's behalf against Standard & Poor's Financial Services LLC (S&P) and the McGraw-Hill Companies, Inc. in Illinois state court. The State alleged that defendants had misrepresented the claimed independence and objectivity of S&P's analysis of structured finance securities, in violation of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 505/2, and the Illinois Uniform and Deceptive Trade Practices Act (UDTPA), 815 ILCS 510/2(a)(5), (7) & (12). On March 6, 2013, defendants removed the case to federal court, contending that this Court has original jurisdiction under 28 U.S.C. § 1331. The State has moved to remand the case to state court. For the reasons stated below, the Court grants the motion to remand.

### Background

McGraw-Hill is the parent company of S&P, an entity that operates as a credit

rating agency for a broad range of securities. On January 25, 2012, the State filed suit against the defendants in the Circuit Court of Cook County, Illinois. In the lawsuit, the State alleged that the defendants had consistently misrepresented that S&P's credit analysis of structured finance securities was objective, independent, and uninfluenced by its own or its clients' financial interests, in violation of the ICFA and the UDTPA. The State's allegations and claims mirrored those in lawsuits that the attorneys general of Connecticut and Mississippi had filed in 2010 and 2011.

On April 23, 2012, defendants moved to dismiss the State's complaint on a variety of grounds. Defendants' arguments included contentions that the State's claims are preempted by the Credit Rating Agency Reform Act of 2006 (CRARA), 15 U.S.C. § 78o-7, and are barred by the First Amendment to the United States Constitution. The state court denied defendants' motion to dismiss the case on these bases.

On February 5, 2013, the attorneys general of fourteen other states filed their own separate lawsuits against the defendants in various state courts, also alleging violations of state consumer protection and unfair trade practices laws. That same day, the Illinois Attorney General issued a press release lauding her state counterparts and the U.S. Attorney General (who had also filed suit) for "joining her" via their lawsuits. Just under thirty days later, on March 6, 2013, defendants removed the present case to this Court.

The State has moved to remand this case to Illinois state court. It contends that defendants' notice of removal was untimely and that it fails to meet the requirements for establishing federal-question jurisdiction under *Grable & Sons Metal Prods. Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005).

## Discussion

A defendant may remove to federal court a state court civil action over which a federal court has original jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden of establishing federal jurisdiction. This Court construes the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of a state court forum. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

### I. Timeliness of notice

Ordinarily, a notice of removal must be filed within thirty days after the defendant receives a copy of the initial pleading in a case. 28 U.S.C. § 1446(b)(3). Defendants contend, however, that the State's complaint did not describe a removable case and that the case became removable only later, in February 2013. They rely on a provision of the removal statute that provides as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.*

Defendants argue that the Illinois Attorney General's February 5, 2013 press release and the State's subsequent responses to interrogatories and requests for admission constitute "other papers" from which it could first be ascertained that the case was removable. Specifically, defendants assert that the press release, which announced a coordinated "wave of litigation" attacking the independence of S&P's credit rating process, first revealed to defendants a nationwide effort by multiple states to (defendants say) regulate S&P's national conduct. This task, they argue, was

3

delegated exclusively to the Securities and Exchange Commission (SEC) under CRARA. As a result, defendants contend, the states' purported regulatory efforts, and thus this and the other cases, substantially implicate significant federal issues. Defendants further contend that the State's discovery responses, served on February 19 and 20, 2013, mirrored the allegations from one or more the complaints filed by other states on February 5 and rejected the SEC's exclusive authority to regulate conflicts of interests faced by S&P. This, defendants say, confirmed the State of Illinois' coordination with the states in the other pending lawsuits.

The Seventh Circuit, and a majority of courts in this and other circuits, have held that filings in other lawsuits – including those involving the same defendant in parallel, factually-similar state actions – do not constitute "other papers" for removal purposes. *See, e.g., Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533-34 (7th Cir. 2008) (citing cases); *see also Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1016 (S.D. Ill. 2007) (noting "general rule in the federal courts that documents generated in cases separate from a case as to which removal is sought are neither orders nor other paper within the meaning of 28 U.S.C. § 1446(b)"); *Arseneault v. Congoleum*, No. 01 C 10657, 2002 WL 472256, at *4 (S.D.N.Y. Mar. 26, 2002) ("[C]ourts – or at least many courts – have generally required that notice be ascertainable from the record or papers produced in the action itself."); *Morsani v. Major League Baseball*, 79 F. Supp. 2d 1331, 1333 (M.D. Fl. 1999) ("[C]ourts interpret Section 1446(b) to refer only to 'an amended pleading, motion, order or other paper' that arises within the case for which removal is sought.").

For similar reasons, the Attorney General's press release is not an "other paper"

4

within the meaning of section 1446(b)(3). First of all, the defendants offer no authority, and the Court is aware of none, that so much as hints that a press release amounts to an "other paper" under the statute. Second, the press release did little more than describe Illinois' already-existing lawsuit and the fact that other state attorneys general, as well as the U.S. government, "joined [Illinois' attorney general] in filing lawsuits against Standard & Poor's." Defs.' App. 2. In other words, the press release described the present case and said that other like cases had been filed. If, as the Seventh Circuit held in *Amgen*, a filing in a separate suit does not qualify as an "other paper" under section 1446(b)(3), the Court sees no basis to conclude that a document *not* filed or served that simply describes other suits possibly could qualify.

Nor was removability, assuming it exists, first triggered by the press release or, for that matter, the filing of the other lawsuits. Via their notice for removal and response to the State's motion to remand, defendants essentially take the position that it was first ascertainable that the State's claims were removable only when, on February 5, 2013, it became apparent that this case was part of a "coordinated wave" of state court suits attacking the independence of S&P's credit rating process. This, according to defendants, indicated for the first time that the State of Illinois and other states were seeking to "*de facto* regulate" S&P's rating and methodologies, a responsibility that defendants argue is vested exclusively with the SEC pursuant to CRARA.

Defendants' argument does not withstand scrutiny. It is clear from defendants' own actions that they believed much earlier that this lawsuit implicated the exact same concern they now cite as the basis for removability. In April 2012, while the present case was still pending in state court, S&P moved to dismiss the State's complaint on

exactly these grounds, claiming that "[CRARA] . . . grants exclusive authority to the SEC to oversee those activities and precludes the states from doing so." Pl.'s Ex. 5 at 2. In their reply brief on that motion, defendants contended that "[i]f the Attorney General of Illinois (and presumably the attorneys general of all other states) is permitted to pursue claims for injunctive relief to address how rating agencies manage and/or disclose those conflicts, the carefully crafted regulatory scheme enacted by Congress would be derailed." Pl.'s Ex. 6 at 2. Then in December 2012, after the state court denied their motion to dismiss, defendants filed an answer to the State's complaint in which they asserted, as affirmative defenses, federal preemption under CRARA as well as the application of the First Amendment. In short, there is no discernible basis in the record to support a determination that defendants "first . . . ascertained" from the February 2013 press release that this case was or had become removable.

For similar reasons, the State's responses to interrogatories and requests for admission served in the state court litigation do not qualify as "other papers" from which defendants first ascertained that the case was removable. The State's responses to defendants' interrogatories one and two referenced additional misrepresentations that are consistent with those alleged in the complaint. Likewise, the State's response to defendants' request to admit number four, in which it denied that the SEC has exclusive authority to regulate S&P, merely repeated the argument that the State had made far earlier, in May 2012, in opposing defendants' motion to dismiss. As discussed earlier, the State's contention that its claims were not preempted by federal law was out there on the table for all to see, and the state court had ruled on it, many months before defendants saw fit to remove the case to this court. *See* Defs.' Ex. A at 79-88 (state

6

court's decision dated November 7, 2012, ruling that the State's claims do not impinge upon the "exclusive" authority of the SEC). In short, no new or different information is contained in the State's discovery responses that made federal jurisdiction *first* ascertainable from those responses. *See Ill. ex rel. Greenblatt v. Commonwealth Edison Co.*, No. 11 C 2009, 2011 WL 2550834, at *4-5 (N.D. Ill. June 27, 2011) (holding removal untimely where plaintiff's supplementary interrogatory response contained no materially new information and where, assuming federal question existed, defendants' own briefs demonstrated that they were aware of it earlier).

In sum, the Court concludes that defendants failed to remove the case within the time required by the removal statute.

## II.     Federal question jurisdiction

Even if defendants' notice of removal had been timely, there is no basis for federal jurisdiction. As noted above, defendants contend that this Court has original jurisdiction on the ground that the case arises under federal law within the meaning of 28 U.S.C. § 1331. See Not. of Removal ¶ 2. Section 1331 extends federal jurisdiction to "all civil actions under the Constitution, laws, or treaties of the United States." In the vast majority of cases, a claim arises under federal law because federal law creates the cause of action. A state law claim may give rise to federal question jurisdiction, however, if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Grable*, 545 U.S. at 314. In order for federal jurisdiction to exist under *Grable*, all four requirements must be met. *Gunn v. Minton*, __ U.S. __, 133 S. Ct. 1059, 1065 (2013).

Defendants make two arguments in support of their contention that federal issues are necessarily raised by this case within the meaning of *Grable*. First, defendants argue that determining liability under the ICFA and the UDTPA for S&P's allegedly fraudulent statements turns on the SEC's regulations and therefore requires application of federal law. To establish liability under the ICFA and the UDTPA, the State must demonstrate that S&P engaged in trade or commerce and that it engaged in deceptive acts in the conduct of that trade or commerce. *People ex rel. Hartigan v. All Am. Aluminum and Const. Co.*, 171 Ill. App. 3d 27, 34, 524 N.E.2d 1067, 1071 (1988). Defendants contend that federal law under CRARA "defines the relevant meaning of the statements at issue," namely whether they are truthful, objective, and independent. Defs.' Resp. at 11. But nothing in CRARA says that the SEC defines the truth or falsity of statements made about the independence of S&P's credit rating process; indeed, the statute provides that the SEC may not regulate the substance of credit ratings or the procedures or methodologies used to determine them. 15 U.S.C. § 78o-7(c)(2). Moreover, even if the SEC's regulations might in some way influence the analysis of the State's claims, the mere "influence of federal law on the outcome of a . . . suit is not enough to support arising-under jurisdiction." *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007); *see also West Virginia v. CVS Pharmacy, Inc.*, 748 F. Supp. 2d 580, 586 (S.D. W. Va. 2010) (remanding and finding no jurisdiction under *Grable* over state attorney general's consumer protection claim even though the claim might implicate ERISA issues, because the claim "will stand or fall on whether defendants' [conduct is] in accordance with [state law.]") (internal quotation marks omitted); *New York v. Dell, Inc.*, 514 F. Supp. 2d 397, 401 (N.D.N.Y. 2007) (remanding and finding no

8

jurisdiction under *Grable* where state attorney general's "right to relief does not necessarily depend upon federal law" because the "claims are fully actionable under the state laws asserted.").

Defendants also contend that federal issues are necessarily raised because both the ICFA and the UDTPA contain statutory exemptions for conduct authorized by, or in compliance with, laws or rules administered by federal agencies. Based on this, defendants argue, a court will be required to look to federal law to determine whether the conduct at issue falls within the state statutes' purview. *See* 815 ILCS 505/10b(1); 815 ILCS 510/4. This argument does not provide a basis for federal question jurisdiction. The issue of defendants' compliance with the ICFA's and the UDTPA's statutory exemptions is an affirmative defense to liability, not something that a plaintiff must prove. *See, e.g., Swanson v. Bank of Am.*, 566 F. Supp. 2d 821, 828 (N.D. Ill. 2008) (noting that compliance with federal statute is a defense under the ICFA's statutory exemption). Defendants' argument that S&P's statements constitute protected speech under the First Amendment is likewise an affirmative defense (and was raised as such in the motion to dismiss that defendants filed in state court). As the Seventh Circuit has explained, "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction." *Chicago Tribune Co. v. Bd. of Trs. of Univ. of Illinois*, 680 F.3d 1001, 1003 (7th Cir. 2012); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[A] case may not be removed to federal court on the basis of a federal defense.").

In sum, defendants have failed to show that federal issues are necessarily raised. Thus the Court need not address the remaining requirements that defendants

must meet in order to establish federal question jurisdiction under *Grable*.

**Conclusion**

For the foregoing reasons, the Court grants the State's motion to remand [docket no. 10]. The Clerk is directed to remand the case to the Circuit Court of Cook County.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 2, 2013